# TAYLOR & COHEN LLP

305 Broadway, 7th Floor
New York, NY 10007
Tel (212) 257-1900
Fax (646) 808-0966
www.taylorcohenllp.com

May 4, 2026

*By ECF and Email*

The Honorable Carol Bagley Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** ***U.S. v. Michail Chkhikvishvili,* 24-cr-286 (CBA)**

Dear Judge Amon:

I represent Michail Chkhikvishvili in the above-referenced case. I am writing in response to the government's May 1, 2026 letter (ECF Doc. 50). On February 19, 2026, the Court entered an order directing the government "to provide the Court with a list of individuals it wishes to have appear by phone and ***how*** they are classified of victims." (ECF Doc. 45 (emphasis added)). In its May 1, 2026 letter, the government identified one such individual, a survivor of the January 22, 2025 Antioch High School shooting. Aside from the claim that the "shooting [was] inspired by Maniac Murder Cult," (ECF Doc. 50), the government's letter does not, on its face, set out the factual basis tying the survivor's harm to the charged offense in this case or explain why she qualifies as a victim of this defendant rather than of the shooter, Solomon Henderson.

Mr. Chkhikvishvili's offense conduct consisted of soliciting an undercover FBI agent to commit acts of mass violence in New York, such as bombings, arson and poisoning, targeting racial minorities, Jews and homeless people. The defendant also provided materials, such as bomb-making instructions, to the undercover agent to help carry out these crimes. *See* PSR ¶ 11. There is no direct or proximate causal link between this conduct and the school shooting. To be clear, the government claims only that the shooter was "inspired" by Maniac Murder Cult; the government does ***not*** claim that Mr. Chkhikvishvili directly solicited Solomon Henderson, whom he did not know and with whom he never communicated, to carry out his attack.

The government's assertion that Maniac Murder Cult and Mr. Chkhikvishvili "inspired" the shooting oversimplifies how Henderson became radicalized as well as the triggers that provided the catalyst for the attack. As set forth in the defendant's February 20, 2026 letter, Henderson was radicalized online by a wide array of sources. (*See* ECF Doc. 46). There is no indication that the Maniac Murder Cult was

his primary inspiration.[1] The Anti-Defamation League's report on the shooting, which lists a host of the shooter's influences, does not mention Maniac Murder Cult, the Hater's Handbook, or Commander Butcher.[2] Furthermore, as Professor Jason Blazakis, the Executive Director of the Center on Terrorism, Extremism and Counterterrorism, puts it, "[n]o single document radicalizes in isolation." (ECF Doc. 49-1 at 8). Attributing the Antioch shooting principally to the Hater's Handbook and Maniac Murder Cult "misrepresents how radicalization functions." (*Id.*).

Henderson left behind a manifesto and a diary, which show he meticulously planned his attack over the course of months.[3] In his writings, Henderson cited numerous justifications for violence, some rooted in right-wing accelerationist ideology and others in personal grievances. For example, he repeatedly alleged physical and emotional abuse by his mother, which in turn fueled his hatred of racial and cultural groups. He expressed profound self-loathing as a Black person as well as body-image issues related to his perception that he was unattractive. He also repeatedly expressed suicidal ideation. As his plans progressed in the weeks preceding the attack, Henderson discussed different possible targets, including his own family. There is no indication that Maniac Murder Cult provided the catalyst that transformed his long-standing grievances and misanthropy into the decision to attack his school.

For the survivor of the Antioch shooting to be considered a victim within the meaning of the Crime Victims' Rights Act, 18 U.S.C. § 3771 (the "CVRA"), the defendant's offense must be both the direct and proximate causes of the harm she suffered. *See Rendon Galvis v. Murillo-Bejerano*, 564 F.3d 170, 175 (2d Cir. 2009) ("The [CVRA's] requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses."). Here, there is no causal link between Mr. Chkhikvishvili's offenses and Henderson's attack. *See United States v. Daly*, 2012 U.S. Dist. LEXIS 11395, *11 (D. Conn. Feb. 1, 2012) ("[T]he determination as to whether a person is a 'crime victim' for purposes of the CVRA is made with reference to the conduct underlying the charged offense.").

---

[1] *See* Marc-André Argentino, *Narrative Examination of the Antioch High School Shooter's Manifesto and Diary*, FROM THE DEPTHS (Jan. 23, 2025), https://www.maargentino.com/narrative-examination-of-the-antioch-high-school-shooters-manifesto-and-diary/ (academic's blog post summarizing Solomon Henderson's manifesto and diary entries).

[2] "Antioch, Tenn., Shooter Inspired by Broad Extremist Beliefs and Previous Mass Killers," Anti-Defamation League Center on Extremism (Jan. 23, 2025), available at https://www.adl.org/resources/article/antioch-tenn-shooter-inspired-broad-extremist-beliefs-and-previous-mass-killers.

[3] *See* Argentino, *supra* note 1.

None of the cases cited in the government's letter support allowing a survivor of Henderson's attack to speak at Mr. Chkhikvishvili's sentencing. Contrary to the government's assertion, *United States v. Humber,* 24-cr-257 (DC) (E.D. Cal.) is not at all factually similar. The defendants in *Humber* created a hit list of targets for assassination, which they disseminated on Terrorgram. *See* Indictment, ECF Doc. 1 ¶ 9. The list included a card for each target that displayed the target's name, home address, photograph, and in some cases a photograph of the target's residence. *See id.* Although the victims who appeared remotely at the defendants' sentencing in that case are not identified on the docket, presumably each of them was on the defendants' hit list. *United States v. Maldonado-Passage*, 4 F.4th 1097 (10th Cir. 2021), a murder-for-hire case, is also inapposite. In that case, the defendant's conduct—offering to pay an undercover agent $10,000 to kill the victim—clearly caused (non-physical) harm to the victim. So too, in *United States v. McNeil*, 744 F. App'x 941 (6th Cir. 2018), the victims were specifically targeted by the defendant, who posted their names and addresses online and encouraged others to harm them. In each of those cases, there is a clear nexus between the defendants' offenses and the victims whom they specifically targeted. By contrast, in this case, Mr. Chkhikvishvili did not identify the Antioch victims as targets, nor did he solicit Henderson's attack.

Finally, even if the Court may consider broad categories of information at sentencing under 18 U.S.C. § 3661, a live victim allocution from a survivor of a different actor's shooting would be highly inflammatory while only weakly probative "concerning the background, character, and conduct" of Mr. Chkhikvishvili. While it is difficult to deny a young survivor of a horrific attack the opportunity to attain some form of closure by speaking publicly about her experience, allowing such a statement at Mr. Chkhikvishvili's sentencing would be unfairly prejudicial because of the lack of a clear nexus between the shooting and Mr. Chkhikvishvili's offense. *See United States v. Degroate*, 940 F.3d 167, 175 (2d Cir. 2019) (stating that "Rule 32 gives only four parties an explicit right to speak at sentencing: the defendant's attorney, the defendant, the Government, and any victims who may be present").

Accordingly, the defense objects to the government's submission of a live statement by a survivors of the Antioch High School shooting.

Respectfully submitted,

Zachary S. Taylor

cc:     Ellen Sise, Esq.
        Andrew Reich, Esq.
                Assistant United States Attorneys